**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edith Eloise James, | No. CV-12-2663-PHX-LOA |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff seeks review of the Social Security Administration's decision denying her application for supplemental security income. The parties, who have expressly consented in writing to proceed before the undersigned Magistrate Judge per 28 U.S.C. § 636(c), have filed briefs in accordance with the Rules of Practice ("Local Rules" or "LRCiv") 16.1. (Docs. 19, 22 & 23)  After review of the record, briefing and applicable law, the decision of the Commissioner is affirmed.

**I.  Procedural Background**

In October 2009, Plaintiff filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act ("Act").[1]  *See* 42 U.S.C. §§

---

[1] "The Supplemental Security Income ("SSI") program, provided for at 42 U.S.C. § 1381 *et seq.*, provides cash payments to aged, blind, and disabled Americans for the purpose of ensuring that they have 'at least a subsistence level income.'" *Newman v. Apfel*, 223 F.3d

1381-1383c. (AR[2] 130-135)  Plaintiff was 42 years old when she filed the application and has a tenth-grade education. (AR 41-42) Plaintiff reported in the application that she became disabled on November 1, 2001. (AR 130, 143)  Plaintiff initially identified HIV, high blood pressure, asthma, headaches, hepatitis C, and a herniated disc as the conditions that limit her ability to work. (AR 148)  At the administrative hearing, however, Plaintiff and her counsel made it clear that the impairments related to her back are the primary bases for her disability claim. (AR. 44-48)  Thus, the Administrative Law Judge ("ALJ") focused his questions at the hearing on Plaintiff's back-related impairments. (AR 48)

Plaintiff's application was denied by the Social Security Administration ("SSA") on January 26, 2010. (AR 81-84)  Her request for reconsideration was denied on May 12, 2010. (AR 88-91)  At Plaintiff's request, a hearing was held on May 19, 2011, before ALJ Alan Markiewicz. (AR 34-67, 92)  In a written decision, dated June 14, 2011, the ALJ ruled Plaintiff is not entitled to disability benefits because she "has not been under a disability within the meaning of the Social Security Act since October 8, 2009, the date the application was filed." (AR 20, 20-28)

Plaintiff filed a Request for Review of Hearing Decision/Order on July 5, 2011. (AR 14-15)  On October 19, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1-3)  As a result of the denial, the ALJ's decision became the final decision of the SSA on that date. (AR 1)

On December 14, 2012, and having exhausted the administrative review process, Plaintiff sought judicial review of the Commissioner's decision by filing a Complaint in this District Court pursuant to 42 U.S.C. § 405(g). (Doc. 1)  On May 2, 2013, Plaintiff filed an

---

937, 938 (9th Cir. 2000) (citations omitted). "The benefits are meant to 'supplement an individual's other sources of income.'" *Id.*

[2] Citations to "AR" are to the administrative record.

opening Brief pursuant to LRCiv 16.1, in which she seeks a remand for an award of disability benefits or, alternatively, a remand for further administrative proceedings. (Doc. 19) On July 1, 2013, Defendant filed an Opposition to Plaintiff's Opening Brief. (Doc. 22) Plaintiff filed a Reply Brief on July 18, 2013. (Doc. 23)

## II.  Applicable Legal Standards

### A. Standard of Review

A district court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reddick*, 157 F.3d at 720. In determining whether substantial evidence supports the ALJ's decision, a district court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." *Reddick*, 157 F.3d at 720-21.

### B.  Sequential Evaluation Process

To be eligible for Social Security disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant bears the initial burden of proving disability. 42 U.S.C. § 423(d)(5);

1  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). A five step procedure is used to

2  evaluate a disability claim:

> In step one, the Secretary determines whether a claimant is currently engaged
> in substantial gainful activity.  If so, the claimant is not disabled.  20 C.F.R. §
> 404.1520(b). In step two, the Secretary determines whether the claimant has
> a "medically severe impairment or combination of impairments," as defined
> in 20 C.F.R. § 404.1520(c). If the answer is no, the claimant is not disabled.
> If the answer is yes, the Secretary proceeds to step three and determines
> whether the impairment meets or equals a "listed" impairment that the
> Secretary has acknowledged to be so severe as to preclude substantial gainful
> activity.  20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is
> conclusively presumed disabled; if not, the Secretary proceeds to step four.  At
> step four, the Secretary determines whether the claimant can perform "past
> relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform such
> work, she is not disabled.  If the claimant meets the burden of establishing an
> inability to perform prior work, the Secretary must show, at step five, that the
> claimant can perform other substantial gainful work that exists in the national
> economy. 20 C.F.R. § 404.1520(f).

*Reddick*, 157 F.3d at 721.

## III.  ALJ Decision

Applying the five-step procedure in this case, the ALJ determined Plaintiff has not

engaged in substantial gainful activity since October 8, 2009, the application date. (AR 22)

The ALJ found Plaintiff has the following "severe" impairments within the meaning of the

regulations: disc disease of the lumbar spine/spina bifida, HIV, hepatitis C, and asthma. (*Id.*)

The ALJ determined, however, that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (*Id.*) As a result, the ALJ assessed Plaintiff's residual functional

capacity[3] ("RFC"). (AR 22-27)  The ALJ determined Plaintiff has the RFC to perform light

work as defined in 20 C.F.R. § 416.967(b), but with limitations. (AR 23) Specifically, he

found Plaintiff is able to lift and/or carry twenty pounds occasionally and ten pounds

frequently; stand and walk for six hours in an eight-hour workday; and sit for six hours in an

---

[3] The term "residual functional capacity" means the most an individual can do after
considering the effects of physical and/or mental limitations that affect the ability to perform
work-related tasks. *See* 20 C.F.R § 404.1545(a)(1-2).

eight-hour workday. (*Id.*) The ALJ further found Plaintiff "is capable of occasionally climbing ramps and stairs and can occasionally balance, stoop, kneel, crouch and crawl; but is precluded from climbing ladders, ropes and/or scaffolds. She should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." (*Id.*)

In addition, the ALJ determined Plaintiff has no past relevant work but found, "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform. (AR 27)  Based on these findings, the ALJ concluded Plaintiff has not been under a "disability," as defined in the Act, since the date of the application. (AR 28)  Consequently, the ALJ ruled Plaintiff is not entitled to supplemental security income. (*Id.*)

**IV.  Analysis**

Plaintiff contends in her opening brief that the Commissioner's decision should be reversed and the case remanded for an award of benefits. Plaintiff argues the ALJ erred by rejecting the assessments of Plaintiff's treating physician and treating nurse practitioner, and relying on the opinions of a one-time examining physician and a non-examining State agency physician. Plaintiff also argues the ALJ erred by rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so. In the responsive brief, Defendant disputes each of Plaintiff's arguments and contends the administrative decision is supported by substantial evidence and free of harmful legal error.

**A. Alleged Error in Rejecting the Opinions of Treating Sources and Relying on Non-Treating Sources**

Plaintiff contends the ALJ erred by rejecting the assessments of the treating physician, Douglas Cunningham, M.D., and treating nurse practitioner, Judith Bergman, N.P., without providing sufficient reasons. Plaintiff argues "the ALJ's stock language used to reject both Dr. Cunningham and NP Bergman's assessments fails to pass muster under any standard." (Doc. 19 at 19)

Plaintiff further argues the opinions of a one-time examining physician, Neil McPhee,

M.D., and a non-examining State agency physician, Roy Brown, M.D., to which the ALJ assigned "significant weight" and "great weight," respectively, do not constitute substantial evidence on which to base a non-disability finding. Plaintiff contends the ALJ fails to identify specific evidence in the record that he relied on to support acceptance of these opinions, and the reasons provided by the ALJ for relying on the opinions are vague.

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The opinion of a treating physician is generally entitled to more weight than the opinion of a non-treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

A treating physician's opinion, however, is not necessarily conclusive and an ALJ may disregard the opinion whether or not the opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Where a treating physician's opinion is uncontradicted, an ALJ may reject it only by presenting clear and convincing reasons for doing so. *Id.* If a treating doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Moreover, an ALJ is not required to accept a brief and conclusory opinion from a treating physician that is unsupported with clinical findings or by

the record as a whole. *Id.*; *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). When there are conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

Additionally, examining physicians' opinions carry more weight than those of non-examining physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1). An examining physician's uncontradicted opinion may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. Even if the examining physician's opinion is contradicted, an ALJ may not reject the examining physician's opinion without setting forth "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Id.* at 831 (emphasis in original).

**1. Dr. Cunningham**

The ALJ identified Dr. Cunningham as a treating physician. (AR 26) Plaintiff acknowledges in her opening brief, however, that there is no evidence in the record that Dr. Cunningham himself provided "hands-on" treatment to the Plaintiff. (Doc. 19 at 17, n.19) Plaintiff contends that Dr. Cunningham "obviously" supervised NP Bergman, though she cites to no records indicating there was such supervision. (*Id.*) Plaintiff accurately notes that Christopher W. Huston, M.D., at The Orthopedic Clinic Association, P.C., reported his findings to Dr. Cunningham, following an orthopedic examination of Plaintiff on July 21, 2009. (*Id.*) (citing AR 229). Plaintiff argues Dr. Cunningham was entitled to rely on information from NP Bergman and Dr. Huston in forming his opinion, despite the absence of any records showing he provided treatment to Plaintiff. Plaintiff contends, therefore, Dr. Cunningham's opinion is still entitled to deference. Because the ALJ identified Dr. Cunningham as a treating physician, the Court will apply the standard applicable to treating

physicians in determining whether the ALJ properly rejected Dr. Cunningham's opinion. As the following analysis shows, the Court finds the ALJ satisfied the standard by providing specific and legitimate reasons supported by substantial evidence in the record.

On March 25, 2010, Dr. Cunningham and NP Bergman jointly completed a Medical Assessment Of Ability To Do Work Related Physical Activities. (AR 379-381) With regard to exertional limitations, Cunningham and Bergman checked boxes indicating Plaintiff could occasionally lift and/or carry less than ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk for a total of less than two hours in an eight hour workday, and sit for a total of less than six hours in an eight hour workday. (AR 379) They did not answer how many hours Plaintiff could sit. (*Id.*) They indicated a medically required hand-held assistive device was necessary for ambulation and said Plaintiff must alternate sitting and standing due to her symptoms. (*Id.*) They did not respond, however, to how often Plaintiff must alternate sitting and standing. (AR 380)

With regard to postural limitations, Cunningham and Bergman checked the boxes indicating Plaintiff could never do any of the six actions listed, including climbing, balancing, stooping, kneeling, crouching and crawling. (*Id.*) Regarding Plaintiff's use of her hands, they indicated Plaintiff could never reach with her right or left hand, and could only occasionally do handling, fine manipulation, and feeling with each hand. They further indicated that all six listed environmental limitations restricted Plaintiff, including heights, moving machinery, temperature extremes, chemicals, dust and noise. (AR 381) Finally, they did not describe any findings to support the assigned limitations. (*Id.*)

The ALJ gave Dr. Cunningham's assessment of Plaintiff's ability to do work-related physical activities "little weight." (AR 26)  The ALJ found the assessment "heavily favors the [Plaintiff's] subjective complaints and is inconsistent with the objective findings, other

1   opinion evidence, and the record as a whole, including Dr. Cunningham's own records."[4]

2   Prior to reaching his conclusion that Dr. Cunningham's opinion was entitled to little weight,

3   the ALJ discussed each of the grounds he relied upon to reach his conclusion.

4       The ALJ discussed at length Plaintiff's subjective complaints, including her

5   contention that she is in constant pain from her back, left side and left leg. (AR 22) As a

6   result, Plaintiff contends she can only stand or sit for fifteen minutes at a time and she is

7   "always up and down." (*Id.*)  Plaintiff claims she can only lift ten pounds, can sit for only one

8   hour total in an eight-hour workday, and can stand for only forty-five minutes total in an

9   eight-hour workday. (*Id.*)

10      The ALJ found Dr. Cunningham's assessment too closely relied upon Plaintiff's

11  subjective complaints and was not consistent with the objective evidence. He discussed the

12  objective evidence in his decision. Specifically, the ALJ addressed the results of a lumbar

13  spine MRI in July 2009 that showed "moderate" stenosis, "mild" effacement, and "mild"

14  levoscoliosis. (AR 25)  He also referenced a September 2008 radiologic lumbosacral spine

15  examination that revealed only "mild" levoscoliosis, and a right hip radiological examination

16  at the same time that showed "unremarkable" results. (*Id.*)  The ALJ further discussed lumbar

17  spine radiologic images from December 2009 that showed a left transverse process and spina

18  bifida occulta, but the images also revealed normal vertebral height, alignment and

19  interspacing, and "no evidence" of spondylosis or spondylolisthesis. (*Id.*)   The ALJ

20  addressed other imaging examinations that also showed "normal" or "unremarkable" results.

21  (*Id.*)

22      In further support of his decision to assign little weight to Dr. Cunningham's

23  assessment, the ALJ noted the assessment was inconsistent with other opinion evidence.

24  Clearly, he was referring to the opinions of the consultative examining physician, Neil

25

26      [4] Because there are no records showing Dr. Cunningham examined and treated
27  Plaintiff, the Court assumes the ALJ is referring to the treatment records of NP Bergman,
    who was, according to Plaintiff, being supervised by Dr. Cunningham.

1   Edward McKee, M.D., and the State agency non-examining medical consultant, Roy Brown,

2   M.D., both of whom provided assessments of Plaintiff's work-related abilities that

3   contradicted Dr. Cunningham's. (AR 25-26) As discussed below, the ALJ did not err in

4   considering, and assigning greater weight to, the opinions of Drs. McKee and Brown.

5       Lastly, the ALJ rejected Dr. Cunningham's opinion because it was inconsistent with

6   Dr. Cunningham's own records. The Court has reviewed the treatment records from Pueblo

7   Family Physicians, Dr. Cunningham and NP Bergman's practice group, which are referenced

8   in the ALJ's decision. (AR 262-271, 294-305, 354-359, and 418-432) As noted above, the

9   treatment records reflect that all of Plaintiff's visits were with NP Bergman. The records

10  show Plaintiff first saw Bergman on January 23, 2009. (AR 305)  Plaintiff continued to see

11  Bergman frequently and consistently for more than two years, with the last visit occurring

12  on April 28, 2011. (AR 418) By the Court's count, Plaintiff saw Bergman on thirty-five

13  separate occasions over that period. (AR 262-271, 294-305, 354-359, and 418-432)

14      On nearly every one of those occasions, Bergman observed Plaintiff was "fully

15  independent and ambulatory with a steady gait." (*Id.*) Bergman's observations were

16  sometimes qualified by Plaintiff's use of a cane. (*Id.*) Many of the records also indicated

17  Plaintiff's gait or posture was within normal limits. (*Id.*) In addition, the records reflect

18  Plaintiff sometimes complained of chronic low back and hip pain. (*Id.*)  Other times,

19  however, there was no reference to any back problems or pain. (*Id.*)  In some of the records

20  that addressed Plaintiff's back issues, Plaintiff said her back pain was under good control.

21  (*Id.*)

22      Based on its review of Plaintiff's treatment records from Pueblo Family Physicians,

23  the Court finds that substantial evidence in the record supports the ALJ's determination that

24  the very strict limitations set forth in Dr. Cunningham assessment of Plaintiff's work-related

25  activities are inconsistent with the treatment records from his own practice group. The

26  records simply do not depict Plaintiff as an individual with the extreme limitations identified

27  by Dr. Cunningham in his assessment.

1    For these reasons, the Court finds the ALJ satisfied the legal standard and provided

2    specific and legitimate reasons supported by substantial evidence in the record before

3    rejecting the contradicted opinion of a treating physician. The Court finds no error in the

4    ALJ's decision to assign little weight to Dr. Cunningham's opinion.

5    **2. NP Bergman**

6    In addition to the assessment of ability to do work-related activities prepared jointly

7    with Dr. Cunningham, NP Bergman also prepared a Fatigue Residual Functional Capacity

8    Questionnaire. (AR 413-414) Bergman opined in the questionnaire that Plaintiff suffers from

9    "moderate" fatigue, which means it "affects, but does not preclude ability to function." (*Id.*)

10   Bergman checked "often" when asked how frequent is Plaintiff's experience of fatigue

11   sufficiently severe to interfere with Plaintiff's attention and concentration. (*Id.*)  Bergman

12   also checked "often" when asked to what degree does Plaintiff experience deficiencies of

13   concentration, persistence or pace resulting in failure to complete tasks in a timely manner.

14   (*Id.*) Bergman further stated Plaintiff needs to take naps during the day and would not be able

15   to sustain work on a regular and continuing basis. (*Id.*)

16   In addition, Bergman prepared a second Medical Assessment Of Ability To Do Work

17   Related Physical Activities on April 28, 2011. (AR 415-417) With regard to exertional

18   limitations, Bergman checked boxes indicating Plaintiff could occasionally lift and/or carry

19   ten pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of at least

20   two hours in an eight hour workday, and sit for a total of less than six hours in an eight hour

21   workday. (AR 415) Bergman did not answer how many hours Plaintiff could sit. (*Id.*)

22   Bergman indicated a cane was necessary for ambulation and wrote Plaintiff must alternate

23   sitting and standing due to symptoms. (*Id.*)

24   With regard to postural limitations, Bergman checked the boxes indicating Plaintiff

25   could never do three of the six actions listed, climbing, balancing, and crawling, but could

26   occasionally do the other three, stooping, kneeling, and crouching. (*Id.*) Regarding Plaintiff's

27   use of her hands, Bergman indicated Plaintiff could frequently do handling, fine

manipulation, feeling, and reaching with each hand. Bergman further indicated that all six listed environmental limitations restricted Plaintiff, including heights, moving machinery, temperature extremes, chemicals, dust and noise. (AR 416) Finally, when asked to describe the findings that support the assigned limitations, Bergman wrote Plaintiff has chronic lower back pain, weakness and low stamina. (AR 417)

The ALJ gave NP Bergman's opinion "little weight" for the same reasons he gave little weight to Dr. Cunningham's opinion, "because it heavily favors the [Plaintiff's] subjective complaints and is inconsistent with the objective findings, other opinion evidence, and the record as a whole, including Nurse Bergman's own records." The ALJ further noted, "a nurse practitioner is not an acceptable medical source for purposes of evaluating Social Security disability (Social Security Ruling ("SSR") 06-03)."

Although Plaintiff acknowledges NP Bergman is not an "acceptable medical source," she contends Bergman qualifies as an other "medical source" for whom the same treating source standard should apply before her opinion can be rejected. (Doc. 19 at 14 n.8 and 21) The Court need not resolve this issue because even if the Court applies the same treating source standard that was applied to Dr. Cunningham, the Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in the record before rejecting Bergman's opinion. Because the ALJ rejected Bergman's opinion for the same reasons he rejected Dr. Cunningham's, the Court's analysis of those reasons applies with equal force to the ALJ's rejection of Bergman's opinion and need not be repeated. Accordingly, the Court finds no error in the ALJ's decision to assign little weight to NP Bergman's opinion.

### 3. Drs. McPhee and Brown

Neil McPhee, M.D., a consultative examining physician, saw Plaintiff on December 29, 2009. (AR 335-337) Dr. McPhee performed a physical examination and explained his findings. (AR 336) He said Plaintiff "walks with somewhat unusual antalgic gait which does

not appear to be physiologic.'"[5] (*Id.*)  Plaintiff had a cane with her and was able to take a few

steps in the examining room without it. (*Id.*) She was able to squat and rise, and bend forward

such that her fingers reached the level of her knees. (*Id.*) Plaintiff "got up from the chair,

donned and doffed her clothing and shoes and got onto the examination table." (*Id.*) "Her

shoulders, elbows, wrists, hips, knees, and ankles moved through a full range of motion."

(*Id.*) "She was tender over the left PSIS,"[6] but "[s]he was not tender over either hip." (*Id.*)

Dr. McPhee did not have the Lumbar Spine MRI, presumably the one performed on

July 13, 2009 (AR 254), in the records he reviewed. (AR 336) Plaintiff told him the MRI

showed two herniated discs, but his examination revealed nothing to indicate radiculopathy.

(*Id.*)

Based on his examination and record review, Dr. McPhee opined Plaintiff is limited

to lifting fifty pounds occasionally and twenty-five pounds frequently. (AR 337) He said she

could stand or walk for about six hours in an eight hour workday and sitting would not be

limited. (*Id.*)  He found nothing on examination to indicate a cane is a medical necessity. (*Id.*)

He identified other minor limitations, but nothing that would preclude her from all work. (*Id.*)

The ALJ gave Dr. McPhee's opinion "significant weight because it considers the [Plaintiff's]

subjective complaints and is consistent with the objective findings, opinion evidence, and the

record as a whole." (AR 26)

On January 25, 2010, Roy Brown, M.D., a non-examining State agency physician,

completed a Physical Residual Functional Capacity Assessment. (AR 339-346) After

reviewing the records, Dr. Brown determined Plaintiff could occasionally lift and/or carry

twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in

---

[5] "Antalgic gait is a form of gait abnormality where the stance phase of gait is abnormally shortened relative to the swing phase. It can be a good indication of pain with weight-bearing." *See* www.wikipedia.org (last viewed on March 4, 2014).

[6] "Posterior superior iliac spine" or PSIS is "part of the human hip bone." *See* www.wikipedia.org (last viewed on March 4, 2014).

1    an eight hour workday, and sit for about six hours in an eight hour workday. (AR 340) He

2    did not explain what evidence supported those determinations. (*Id.*) He further determined

3    Plaintiff could occasionally balance, stoop, kneel, crouch, crawl and climb a ramp or stairs,

4    but never climb a ladder, rope or scaffold. (*Id.*) He explained Plaintiff's back pain could

5    result in loss of balance and increase the chance of injury. (*Id.*) Dr. Brown found no other

6    limitations on Plaintiff's ability to work. (AR 342-343)  At the end of his report, Dr. Brown

7    explained that the medical evidence of record documents Plaintiff's impairments, including

8    HIV, back pain, headaches and asthma, but her Hepatitis C is not well documented. (AR 346)

9    He concluded that based on the medical evidence of record, Plaintiff is capable of the RFC

10   set forth in his report. (*Id.*) The ALJ gave Dr. Brown's opinion "great weight because it

11   considers the [Plaintiff's] subjective complaints and is consistent with the objective findings,

12   opinion evidence, and the record as a whole." (AR 26)

13        Plaintiff argues Dr. McPhee's and Dr. Brown's assessments are not substantial

14   evidence because Dr. McPhee did not base his opinion on independent findings, specifically

15   the MRI, and because Dr. Brown provided little explanation for his conclusions. Plaintiff

16   further argues the reasons provided by the ALJ for assigning greater weight to the McPhee

17   and Brown opinions are vague and fail to identify the evidence that supports those reasons.

18   The Court disagrees.

19        First, Dr. McPhee acknowledged he did not review the MRI, but explained that his

20   examination did not produce findings to indicate a radiculopathy, suggesting he would have

21   expected such findings if the MRI showed two herniated discs as Plaintiff indicated.

22   Moreover, perhaps because Dr. McPhee did not have access to the MRI, the ALJ did not

23   adopt the less restrictive limitations identified by Dr. McPhee. Rather, in determining

24   Plaintiff's RFC, the ALJ adopted the more restrictive limitations identified by Dr. Brown.

25   The Court finds, therefore, the ALJ adequately considered Dr. McPhee's inability to review

26   the MRI in assigning weight to Dr. McPhee's opinion.

27        Second, Dr. Brown's report makes it clear he reviewed the medical evidence of record

in arriving at his conclusions. Plaintiff provides no case authority to show a specific level of explanation is required before an ALJ can rely on a non-examining physician's opinion. As explained above, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or a* treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). Here, however, the ALJ is not relying on Dr. Brown's opinion, by itself, as substantial evidence. Plaintiff's argument that Dr. Brown's opinion does not constitute substantial evidence because it fails to sufficiently explain his conclusions is rejected as without merit.

Finally, the Court disagrees with Plaintiff's contention that the ALJ failed to identify any evidence in the record to support his decision to assign greater weight to Dr. McPhee's and Dr. Brown's opinions. As noted above, the ALJ summarized the "objective evidence," specifically identifying MRI's of the lumbosacral spine and the left hip, multiple x-rays of the lumbosacral spine and the right hip, and bone density examinations. (AR 25)  The ALJ also cited Plaintiff's treatment records, primarily from Pueblo Family Physicians, and summarized the findings from Plaintiff's physical examinations. (AR 24) In assigning greater weight to Dr. McPhee's and Dr. Brown's opinions, the ALJ wrote that, among other reasons, their opinions were consistent with the objective findings and the record as a whole, both of which he specifically discussed earlier in the decision. Thus, the Court disagrees with Plaintiff's contention that the ALJ did not specify what evidence he believed supported the assessments of Dr. McPhee and Dr. Brown. The Court finds no error in the ALJ's assignment of "significant weight" and "great weight" to Dr. McPhee's and Dr. Brown's opinions, respectively.

**B. Discounting of Plaintiff's Symptom Testimony**

Plaintiff next argues the ALJ erred by rejecting Plaintiff's symptom testimony without providing clear and convincing reasons supported by substantial evidence in the record. (Doc. 19 at 21-28)  Plaintiff contends that because the ALJ made no finding of malingering, he may not reject such testimony without satisfying this high standard.  Defendant argues in

response that the ALJ provided legally sufficient reasons for finding Plaintiff's symptom testimony not credible. (Doc. 22 at 17-21)

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*). A claimant need only show that her medically determinable impairment could reasonably be expected to produce some degree of the symptom alleged, not "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if a claimant satisfies this test, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281.

Further, to determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.*

Plaintiff testified at the administrative hearing that she is in constant pain from her back, left side and left leg. (AR 44) As a result, Plaintiff stated she can only stand or sit for fifteen minutes at a time. (AR 48) Plaintiff further claimed she can only lift ten pounds, can

sit for only one hour total in an eight-hour workday, and can stand for only forty-five minutes total in an eight-hour workday. (AR 48-49)  Plaintiff testified she uses a cane whenever she leaves the house and, with the cane, she could walk a block but it would be difficult because she would need to stop and rest. (AR 49-50 ) Plaintiff claimed that "most" of the medications she takes for her conditions make her drowsy or dizzy. (AR 53)

On a typical day, Plaintiff said she takes her medication when she gets up, washes the dishes, and then takes a break and sits down for a while. (AR 54) After the break, she gets up and sweeps, and then sits down for another break. (*Id.*)  After that, she makes her bed and then sits down. (*Id.*)  She also watches television while lying in bed. (*Id.*) She said she makes numerous microwave meals because she cannot stand for long. (AR 54-55) Plaintiff testified she only goes grocery shopping once a month; her daughter drives her to and from the store. (AR 55) Plaintiff said she does not leave the house for any reason other than grocery shopping and doctor visits. (AR 56)

In assessing Plaintiff's credibility, the ALJ found that Plaintiff's "[m]edically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 24) He concluded, "the evidence indicates the [Plaintiff's] impairments are not as severe or as limiting as alleged." (*Id.*)  Although the ALJ provides several reasons for questioning Plaintiff's symptom testimony, the Court will focus on the first reason, the lack of supporting medical evidence, as it is more than sufficient to reject Plaintiff's extreme claims regarding her symptoms and limitations. (AR 24-25)

The ALJ cites treatment records, mostly from Pueblo Family Physicians, the provider Plaintiff sought treatment for the longest period of time, to demonstrate that Plaintiff's treatment records do not support the extreme limitations Plaintiff alleges. (AR 24) The ALJ cites numerous examples where Plaintiff's physical examinations showed normal findings with respect to her back condition. (*Id.*)

1    Similarly, as explained above in the context of addressing Dr. Cunningham's opinion,

2    the Court reviewed all of the treatment records cited by the ALJ. The treatment records

3    showed Plaintiff was examined by NP Bergman on thirty-five separate occasions over a more

4    than two-year period. (AR 262-271, 294-305, 354-359, and 418-432) On virtually every one

5    of those occasions, Bergman observed Plaintiff was "fully independent and ambulatory with

6    a steady gait." (*Id.*)  Many of the records also indicated Plaintiff's gait or posture was within

7    normal limits. Although the treatment records show Plaintiff sometimes complained of

8    chronic low back and hip pain, there is little to nothing in the records to suggest Plaintiff is

9    as limited as she claimed at the hearing. If Plaintiff could truly only stand or sit for fifteen

10   minutes at a time, sit for only one hour total in an eight-hour workday, and stand for only

11   forty-five minutes total in an eight-hour workday, the Court believes the records would show

12   a picture much worse than what Plaintiff's treatment records show.

13   The Court finds the ALJ's primary reason for rejecting Plaintiff's symptom testimony

14   is clear and convincing and is supported by substantial evidence in the record. As a result,

15   the Court need not address the other reasons provided. The ALJ properly cited specific

16   treatment records showing Plaintiff is stronger, more mobile and less restricted than her

17   hearing testimony indicated. The Court, therefore, finds no error in the ALJ's discounting of

18   Plaintiff's symptom testimony.

19   **V. Conclusion**

20   Based on the foregoing analysis, the Court finds the Commissioner's decision is

21   supported by substantial evidence and free from harmful legal error.

22   Accordingly,

23   **IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk

24   of Court is kindly directed to enter judgment accordingly and terminate this appeal.

25   Dated this 5th day of March, 2014.

26

27

Lawrence O. Anderson
United States Magistrate Judge

18